IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE,<br>430 South Capitol Street SE<br>Washington, DC 20003;<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530;<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>2707 Martin Luther King Jr. Avenue SE<br>Washington, DC 20528;<br><br>and<br><br>U.S. DEPARTMENT OF DEFENSE<br>1000 Defense Pentagon<br>Washington, DC 20301<br><br>Defendants. | Civil Action No. 1:26-cv-825 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

The Democratic National Committee, plaintiff herein, alleges:

1. Following repeat threats to free and fair elections from President Trump and his administration—and anticipating additional threats before upcoming elections—the Democratic National Committee (DNC) sent eleven requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, in October 2025 concerning potential deployment of federal agents and troops to polling places, drop boxes, and election offices.

2. Nearly five months later, the DNC has received neither substantive responses nor responsive documents, not even a list of documents withheld under statutory exemptions.

3. By withholding responsive documents past statutory deadlines, the Department of Justice, Department of Homeland Security, and Department of Defense are violating FOIA.

4. To ensure that the American people obtain timely knowledge of potential threats to free and fair elections and to enable the DNC to take appropriate action to ensure voting rights are protected, the DNC now seeks this Court's aid to enforce FOIA requirements.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. §§ 88 and 1391(e), as at least one of the Defendants' headquarters are located in Washington, D.C., within this District, and a substantial part of the events or omissions giving rise to the DNC's claim occurred here.

## PARTIES

7. The Democratic National Committee (DNC) is the oldest continuing party committee in the United States and is the Democratic Party's national committee as defined by 52 U.S.C. § 30101(14). The DNC is dedicated to electing Democratic candidates in Federal, State, and local elections across the country. In support of its mission, the DNC seeks to educate registered Democratic Party members and supporters concerning the electoral process and potential impediments to voting, to protect registered Democratic Party members and supporters from unlawful intimidation, to encourage and assist Democratic Party members and supporters in casting ballots and having those ballots count, and to preserve free and fair elections in the United States.

8. The U.S. Department of Justice (DOJ) is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C. Components of DOJ

include the Federal Bureau of Investigation (FBI), the Criminal Division (CRM), and the Civil Rights Division (CRT).  DOJ has possession, custody, and control of records to which the DNC seeks access.

9. The U.S. Department of Homeland Security (DHS) is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  Components of DHS include U.S. Customs and Border Protection (CBP), the Federal Protective Service (FPS), and U.S. Immigration and Customs Enforcement (ICE).  DHS has possession, custody, and control of records to which the DNC seeks access.

10. The U.S. Department of Defense (DOD) is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.  Components of DOD include the National Guard Bureau (NGB) and Northern Command (USNORTHCOM).  DOD has possession, custody, and control of records to which the DNC seeks access.

## ALLEGATIONS

**Trump Administration Threats Against Polling Places and Election Officials**

11. In early January 2026, President Donald Trump told the New York Times that he regretted not ordering the National Guard to seize voting machines in swing states after his loss in the 2020 Presidential Election.  In the weeks since, President Trump has threatened to "nationalize" elections and "take over" voting.

12. White House Press Secretary Karoline Leavitt later told reporters that she "can't guarantee" that federal law enforcement will not be present at polling locations in November.

13. FBI agents also recently seized ballots cast in Georgia during the 2020 Presidential Election from a Fulton County elections office, based on a warrant affidavit compiling debunked conspiracy theories.

14. Even the Justice Department's longstanding election monitoring program recently departed from historic norms. For decades, DOJ sent career civil servants to locations selected based on the potential for voter intimidation and other violations of federal voting rights laws. In November 2025, the Civil Rights Division monitored locations selected by the California and New Jersey Republican Parties and sent a senior political appointee to personally monitor polling places in heavily Latino communities.

15. These and many other actions have raised serious concerns among voters across the country that the President will order armed federal agents or troops to polling places, drop boxes, and election offices, in violation of 18 U.S.C. § 592, and will send FBI agents or Justice Department officials to interfere with the orderly administration and certification of elections.

**Democratic National Committee Voter Protection and Election Litigation**

16. The DNC runs a voter protection program to ensure that individual eligible voters can overcome impediments to casting a ballot that will be counted.

17. The DNC maintains IWillVote.com, VoyaVotar.com, and SMS-based resources to help voters register to vote, verify voter status, update voter information, learn about polling places and ID requirements, and find important dates and deadlines for voting.

18. The DNC's voter protection hotline—1-833-DEM-VOTE—is monitored by DNC employees and volunteers to address complex voter concerns.

19. During November 2025 elections, the DNC received repeated requests for guidance and assistance concerning Justice Department election monitors and the potential presence of armed federal officers or federal troops at polling places. The DNC provided information, resources, and direct support in response.

20. During February 2026 Minnesota precinct caucuses, the DNC received requests for guidance and assistance concerning the potential presence of armed federal officers at polling places. The DNC provided information, resources, and direct support in response.

21. Gathering accurate information concerning the planned actions of federal, state, and local officials is critical to DNC's voter protection efforts.

22. The DNC also routinely litigates election law disputes to protect free and fair elections, including ensuring that ballots cast by eligible citizens are counted and that lawfully conducted elections are certified by local and state officials.

23. In the past year, DNC litigation efforts have included challenges to executive branch usurpation of authority to establish the time, place, and manner of conducting elections for federal office, authority that the Constitution reserves to Congress and the States.

24. Gathering accurate information concerning the planned actions of federal, state, and local officials is critical to DNC's litigation efforts.

25. In October 2025, the DNC sent eleven requests for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to the Department of Homeland Security, the Department of Justice, the Department of Defense, and their components concerning the presence of federal troops, armed agents, or criminal law enforcement officials at the polls, at ballot drop boxes, or at election offices.

26. FOIA requires agencies to provide a substantive response to FOIA requests "within 20 days"—excluding weekends and holidays—which may be extended for no more than "ten working days." 5 U.S.C. § 552(a)(6)(A)(i)(I), (B)(i).

27. Although more than four months have now passed, the DNC has yet to receive a substantive response to any of the FOIA requests at issue.

**Department of Justice: Federal Bureau of Investigation**

28. On October 17, 2025, the DNC sent a FOIA request to the Federal Bureau of Investigation (FBI) via the FBI EFOIPA Platform and certified mail seeking records related to the deployment of DOJ personnel with criminal law enforcement responsibilities to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

29. This request sought records from January 20, 2025 to the date the request is processed.

30. A true and correct copy of this request is attached as Exhibit 1.

31. On October 29, 2025, the FBI sent a letter acknowledging receipt of this request and assigning reference number 1695509-000.

32. On November 21, 2025, the FBI sent a letter invoking a 10-day extension of statutory deadlines due to "unusual circumstances."

33. The DNC has not received any further communications from the FBI regarding this request.

34. To date, the FBI has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

35. Through the FBI's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

36. The FBI has wrongfully withheld the requested records from the DNC.

**Department of Justice: Civil Rights Division**

37. On October 17, 2025, the DNC sent a FOIA request to the Civil Rights Division of the Department of Justice (CRT) via email and certified mail seeking records related to the

6

deployment of DOJ personnel with criminal law enforcement responsibilities to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

38. This request sought records from January 20, 2025 to the date the request is processed.

39. A true and correct copy of this request is attached as Exhibit 2.

40. On December 3, 2025, CRT sent an email acknowledging receipt of this request and assigning reference number 26-00034-F.

41. Although the DNC submitted its FOIA request to CRT via email, the December 3 Email claimed that CRT did not receive the request until November 21, 2025.

42. The DNC has not received any further communications from CRT regarding this request.

43. To date, CRT has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

44. Through CRT's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

45. CRT has wrongfully withheld the requested records from the DNC.

**Department of Justice: Criminal Division**

46. On October 17, 2025, the DNC sent a FOIA request to Criminal Division of the Department of Justice (CRM) via email and certified mail seeking records related to the deployment of DOJ personnel with criminal law enforcement responsibilities to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

47. This request sought records from January 20, 2025 to the date the request is processed.

48. A true and correct copy of this request is attached as Exhibit 3.

49. On February 11, 2026, CRM sent a letter acknowledging receipt of this request and assigning reference number CRM-302386871.

50. Although the DNC submitted its FOIA request to CRT via email, the February 11 Letter claimed that CRM did not receive the request until October 20, 2025.

51. The DNC has not received any further communications from CRM regarding this request.

52. To date, CRM has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

53. Through CRM's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

54. CRM has wrongfully withheld the requested records from the DNC.

**Department of Justice: Office of Information Policy**

55. On October 17, 2025, the DNC sent a FOIA request to the Department of Justice Office of Information Policy (OIP) via the DOJ FOIA STAR Platform seeking records related to the deployment of DOJ personnel with criminal law enforcement responsibilities to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

56. This request sought records from January 20, 2025 to the date the request is processed.

57. A true and correct copy of this request is attached as Exhibit 4.

58. On December 12, 2025, DOJ OIP sent a letter acknowledging receipt of this request and assigning reference number FOIA-2025-00122.

59. The December 12 Letter also invoked a 10-day extension of statutory deadlines due to "unusual circumstances."

60. On February 18, 2026, DOJ OIP sent a second letter acknowledging receipt of this request, this time assigning reference number FOIA-2026-01714.

61. The February 18 Letter once again invoked a 10-day extension of statutory deadlines due to "unusual circumstances."

62. DOJ OIP has assigned the DNC's request to the Complex processing track.

63. The DNC has not received any further communications from the DOJ OIP regarding this request.

64. To date, DOJ OIP has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

65. Through DOJ OIP's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

66. DOJ OIP has wrongfully withheld the requested records from the DNC.

**Department of Homeland Security: U.S. Customs and Border Protection**

67. On October 17, 2025, the DNC sent a FOIA request to U.S. Customs and Border Protection (CBP) via email and the DHS SecureRelease Portal seeking records related to the deployment of CBP personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

68. This request sought records from January 20, 2025 to the date the request is processed.

69. A true and correct copy of this request is attached as Exhibit 5.

70. On October 20, 2025, CBP sent an email acknowledging receipt of this request and assigning reference number CBP-FO-2026-008615.

71. The October 20 Email also invoked a 10-day extension of statutory deadlines due to "unusual circumstances."

72. CBP has assigned the DNC's request to the Complex processing track.

73. The DNC has not received any further communications from CBP regarding this request.

74. To date, CBP has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

75. Through CBP's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

76. CBP has wrongfully withheld the requested records from the DNC.

**Department of Homeland Security: Federal Protective Service**

77. On October 21, 2025, the DNC sent a FOIA request to the Federal Protective Service (FPS) via email and the DHS SecureRelease Portal seeking records related to the deployment of FPS personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

78. This request sought records from January 20, 2025 to the date the request is processed.

79. A true and correct copy of this request is attached as Exhibit 6.

80. On November 21, 2025, FPS sent a letter acknowledging receipt of this request and assigning reference number 2026-FPFO-00024.

81. Although the DNC submitted its FOIA request to FPS electronically—both via email and via the SecureRelease portal—the November 21 Letter claimed that FPS did not receive the request until November 13, 2025, due to a federal government shutdown.

82. The November 21 Letter also invoked a 10-day extension of statutory deadlines due to the "thorough and wide-ranging search" needed to respond.

83. FPS has assigned the DNC's request to the Simple processing track.

84. The DNC has not received any further communications from FPS regarding this request.

85. To date, FPS has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

86. Through FPS's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

87. FPS has wrongfully withheld the requested records from the DNC.

**Department of Homeland Security: U.S. Immigration and Customs Enforcement**

88. On October 17, 2025, the DNC sent a FOIA request to U.S. Immigration and Customs Enforcement (ICE) via email and the DHS SecureRelease Portal seeking records related to the deployment of ICE personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

89. This request sought records from January 20, 2025 to the date the request is processed.

90. A true and correct copy of this request is attached as Exhibit 7.

91. On November 26, 2025, ICE sent an email acknowledging receipt of this request on October 17 and assigning reference number 2026-ICFO-02081.

92. The November 26 Email also asserted that the request is "not reasonably described" because it is "too broad in scope" and does "not specifically identify the records custodians for the records" that the DNC is seeking. The November 26 Email requested a clarification response within 30 calendar days.

93. On December 1, the DNC provided the requested clarification response, narrowing the request to "records concerning deployment of United States Immigration and Customs Enforcement (ICE) personnel to polling places, ballot drop boxes, or election offices." The clarification response also identified nine document custodians and requested reasonable review of records held by additional custodians identified during the review process as likely to have unique responsive records.

94. ICE has assigned the DNC's request to the Complex processing track.

95. The DNC has not received any further communications from ICE regarding this request.

96. To date, ICE has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

97. Through ICE's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

98. ICE has wrongfully withheld the requested records from the DNC.

**Department of Homeland Security Headquarters**

99. On October 17, 2025, the DNC sent a FOIA request to Department of Homeland Security (DHS) Headquarters via email and the DHS SecureRelease Portal seeking records related to the deployment of DHS personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

100. This request sought records from January 20, 2025 to the date the request is processed.

101. A true and correct copy of this request is attached as Exhibit 8.

102. On December 6, 2025, DHS sent an email acknowledging receipt of this request and assigning reference number 2026-HQFO-00176.

103. The December 6 Email also asserted that the request is not reasonably described because it is too broad in scope and does not specifically identify the records custodians for the records that the DNC is seeking. The December 6 Email requested a clarification response within 30 calendar days.

104. On December 8, the DNC provided the requested clarification response, narrowing the request to "records concerning deployment of Department of Homeland Security (DHS) personnel to polling places, ballot drop boxes, or election offices." The clarification response also identified 13 document custodians and requested reasonable review of records held by additional custodians identified during the review process as likely to have unique responsive records.

105. On December 18, DHS sent an email acknowledging receipt of the DNC's clarification response, which DHS deemed an "amended request."

106. The December 18 Email also invoked a 10-day extension of statutory deadlines "pursuant to 6 C.F.R Part 5 § 5.5(c)."

107. DHS has assigned the DNC's request to the Complex processing track.

108. The DNC has not received any further communications from DHS regarding this request.

109. To date, DHS has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

110. Through DHS's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

111. DHS has wrongfully withheld the requested records from the DNC.

**Department of Defense: National Guard Bureau**

112. On October 17, 2025, the DNC sent a FOIA request to the National Guard Bureau (NGB) via email and certified mail seeking records related to the deployment of uniformed military or national guard personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

113. This request sought records from January 20, 2025 to the date the request is processed.

114. A true and correct copy of this request is attached as Exhibit 9.

115. The DNC has not received any communications from the NGB regarding this request.

116. To date, the NGB has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

117. Through the NGB's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

118. The NGB has wrongfully withheld the requested records from the DNC.

**Department of Defense: Northern Command**

119. On October 17, 2025, the DNC sent a FOIA request to the Department of Defense Northern Command (USNORTHCOM) via email and certified mail seeking records related to

the deployment of uniformed military or national guard personnel to polling places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

120. This request sought records from January 20, 2025 to the date the request is processed.

121. A true and correct copy of this request is attached as Exhibit 10.

122. On October 21, 2025, USNORTHCOM sent a letter acknowledging receipt of this request and assigning reference number 25-R-072.

123. On November 17, 2025, USNORTHCOM sent a letter containing an updated acknowledgment of this request and assigning a new reference number, 26-R-001.

124. The DNC has not received any further communications from the USNORTHCOM regarding this request.

125. To date, USNORTHCOM has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

126. Through USNORTHCOM's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

127. USNORTHCOM has wrongfully withheld the requested records from the DNC.

**Department of Defense: Headquarters**

128. On October 17, 2025, the DNC sent a FOIA request to the Department of Defense Office of the Secretary of Defense / Joint Staff (OSD/JS) via email and certified mail seeking records related to the deployment of uniformed military or national guard personnel to polling

places, ballot drop boxes, or election offices between the start of early voting and the completion of election certification.

129. This request sought records from January 20, 2025 to the date the request is processed.

130. A true and correct copy of this request is attached as Exhibit 11.

131. On November 18, 2025, OSD/JS sent a letter acknowledging receipt of this request and assigning reference number 26-F-0465.

132. The November 18 Letter also invoked a 10-day extension of statutory deadlines due to "unusual circumstances."

133. On December 18, 2025, OSD/JSD sent a second letter acknowledging receipt of this request and assigning a second reference number 26-F-0118.

134. The December 18 Letter also asserted that the request is "not reasonably described" because "it provides an unrestricted scope." The December 18 Email requested a clarification response within 30 workdays days, i.e., by February 4, 2026.

135. On January 7, 2026, more than a month before the response deadline in the December 18 Letter, OSD/JSD sent a letter administratively closing FOIA request 26-F-0118 "because it is similar to your request 26-F-0465."

136. On February 17, 2026, the DNC reached out to OSD/JSD FOIA staff by phone to confirm that the December 18 clarification request does not apply to the 26-F-0465 file. That same day, OSD/JSD sent an email indicating that an update would be forthcoming.

137. On February 20, 2026, OSD/JSD sent an email indicating that a search for documents responsive to the request was underway, "with an "anticipated date of six months from now for completion."

138. The DNC has not received any further communications from OSD/JF regarding this request.

139. To date, OSD/JF has not provided the records requested by the DNC, notwithstanding FOIA's statutory deadlines.

140. Through OSD/JF's failure to respond within the time limits required by law, the DNC has constructively exhausted administrative remedies with respect to this FOIA request.

141. OSD/JF has wrongfully withheld the requested records from the DNC.

## CLAIM FOR RELIEF

### Count I: Freedom of Information Act, 52 U.S.C. § 552

142. The DNC realleges and incorporates by reference the allegations set forth above.

143. By failing to respond to the DNC's requests with determinations and prompt productions of responsive records within the statutorily mandated time period, Defendants have violated their duties under 5 U.S.C.§ 552, including but not limited to, their duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold non-exempt portions of responsive records

## PRAYER FOR RELIEF

WHEREFORE, the Democratic National Committee requests that this Court:

A. Order Defendants to conduct searches for any and all responsive records to the DNC's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

B. Order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

C. Enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

D. Award the DNC its costs, attorneys' fees, and other disbursements for this action; and

E. Grant any other relief this Court deems appropriate.

Dated: March 10, 2026                             Respectfully submitted,

                                                  */s/ Daniel J. Freeman*
Benjamin B. Klubes                                Daniel J. Freeman
(Bar No. 428852)                                  (Bar No. 90038422)
Adam Miller                                       Democratic National Committee
(Bar No. 496339)                                  430 South Capitol Street SE
Klubes Law Group                                  Washington, DC 20003
1717 K Street NW, Suite 900                       (202) 863-8000
Washington, DC 20006                              freemand@dnc.org
(202) 753-5054
bklubes@klubeslaw.com
amiller@klubeslaw.com