**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DEMOCRATIC NATIONAL COMMITTEE,

   Plaintiff,

   v.            Civil Action No. 1:26-cv-825 (BAH)

U.S. DEPARTMENT OF JUSTICE, et al.,

   Defendants.

**DEMOCRATIC NATIONAL COMMITTEE'S BRIEF
IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO STRIKE**

Federal agencies may not pick and choose allegations to answer in a FOIA complaint. Yet Defendants have refused to answer ten paragraphs in the Democratic National Committee's complaint and ask this Court to strike them from the record. This drastic, disfavored tactic is unavailable against allegations that are relevant to the claims and requested relief, let alone against measured and factually grounded allegations like the ones at issue. This Court should reject Defendants' motion and order them to begin review and production of responsive records.

**BACKGROUND**

Following repeat threats to free and fair elections from President Trump and his administration—and anticipating additional threats before upcoming elections—the Democratic National Committee (DNC) sent 11 requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, concerning potential deployment of federal agents and troops to polling places, drop boxes, and election offices. Compl. ¶ 1, ECF No. 1. After receiving no substantive responses for several months, the DNC filed suit against the U.S. Department of Justice (DOJ), the U.S. Department of Homeland Security (DHS), and the U.S. Department of Defense (DOD).

*Id.* ¶¶ 2–4.  Rather than answer the Complaint in full, Defendants have moved to strike ten individual paragraphs (the Challenged Paragraphs).  *See* Mot. to Strike., ECF No. 15.  Paragraphs 1 and 4 explain the importance of the suit.  *See* Compl. ¶¶ 1, 4.  Paragraphs 11 to 15 provide background to the requests.  *See id.* ¶¶ 11–15.  And Paragraphs 19, 20, and 23 describe in part the connection between the requests and the work of the DNC.  *See id.* ¶¶ 19, 20, 23.

## LEGAL STANDARD

This Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[M]otions to strike . . . are disfavored." *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam); *see also Aftergood v. CIA*, 355 F. Supp. 2d 557, 565 (D.D.C. 2005) ("[T]he court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike.").  "A matter is immaterial or impertinent when it is not relevant to the resolution of the issue at hand." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004).  "A pleading or portion thereof qualifies as 'scandalous' for the purposes of Rule 12(f) when it 'generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'"  *Id.* (quoting 2 *Moore's Federal Practice* § 12.37[3], at 12–97).  "Only if the allegations in a complaint are both irrelevant *and* prejudicial to defendant will a motion to strike be granted." *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 252 (D.D.C. 2021) (emphasis added); *see also Makuch v. FBI*, No. 1:99-cv-1094, 2000 WL 915767, at *1 (D.D.C. Jan. 7, 2000) (recognizing that motions to strike a portion of a complaint are "often . . . a dilatory tactic" and a poor use of judicial resources).

**ARGUMENT**

Three times already this year, this Court has denied motions to strike contextual allegations in politically sensitive FOIA complaints.  *See* Order, *American Oversight v. USDOJ*, No. 1:25-cv-3414 (D.D.C. Mar. 18, 2026), ECF No. 13; Order*, American Oversight v. FBI*, No. 1:25-cv-3597 (D.D.C. Feb. 9, 2026), ECF No. 12; Order, *American Oversight v. USDOJ*, No. 1:25-cv-3200 (D.D.C. Jan. 21, 2026), ECF No. 10.   Undeterred, Defendants demand that this Court strike allegations that they deem "false, sensationalized, and wholly unsupported," "patently untrue," "self-aggrandizing," and "fanciful."  Mot. to Strike 4.  Yet review of the paragraphs at issue reveals that they are relevant and neither unnecessarily disparaging nor undignified.   Thus, this Court should reject DOJ arguments already made, "without success, in three previous cases."  *Arizona v. Reno*, 887 F. Supp. 318, 320–21 (D.D.C. 1995) (three-judge court).

I.      **The Challenged Paragraphs Are Relevant to Requested Relief and Potential Defenses.**

Defendants illustrate the relevance of the Challenged Paragraphs by quoting Paragraph 1 on the first page of their motion.  *See* Mot. to Strike 1; *see also Williams v. Chu*, No. 1:07-cv-901, 2010 WL 11575517, at *3 (D.D.C. Sept. 30, 2010) (declining to strike "background facts").  Beyond that tacit concession, the Challenged Paragraphs address standing, the equitable basis for relief, the standard for exemptions that may be asserted, and the basis for the DNC's fees claim.

The Challenged Paragraphs tie the FOIA requests to the DNC's activities, confirming the DNC's standing.  Although Defendants have not yet challenged standing, *see* Answer, ECF No. 16, the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), recently unsettled informational injury doctrine by requiring proof of "downstream consequences."  *Id.* at 442 (Fair Credit Reporting Act); *see also, e.g.*, *Public Interest Legal Found., Inc. v. Sec'y of Commonw.*, 136 F.4th 456, 461 (3d Cir. 2025) (National Voter Registration Act).  Tensions persist

3

between *TransUnion* and the simple FOIA standing requirement articulated in *Public Citizen v. USDOJ*, 491 U.S. 440, 449 (1989).  *See Nat'l Security Archive v. CIA*, 104 F.4th 267, 272 n.1 (D.C. Cir. 2024).  Thus, allegations establishing public fear of armed deployments and the consequences of uncertainty, Compl. ¶¶ 1, 4, 11–15, 19–20, 23, reinforce the DNC's standing and are relevant to an unwaivable defense.

The Challenged Paragraphs are also relevant to this Court's "equitable powers to require [an] agency to process documents according to a court-imposed timeline." *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014).  Although the DNC did not request expedited processing— which is generally available only to requestors "primarily engaged in disseminating information," 5 U.S.C. § 552(a)(6)(E)(v)(II)—this Court may accelerate processing matters "of significant importance to the debates of the day" and of "time-sensitive importance." *Middle East Forum v. USDHS*, 297 F. Supp. 3d 183, 186–87 (D.D.C. 2018).  Presidential statements and the public's responses thereto, Compl. ¶¶ 1, 4, 11–15, 19–20, 23, illustrate the need for prompt processing here.

Failures to process the FOIA requests leaves the DNC unaware of exemptions Defendants may assert, but the Challenged Paragraphs are also relevant to likely assertions of the deliberative process privilege.  "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need," turning in part on "relevance" and "the seriousness of the litigation." *In re Sealed Case*, 121 F.3d 729, 737–38 (D.C. Cir. 1997).  As Defendants concede, "the public-benefit analysis is an *ex ante* inquiry." Mot. to Strike 5 (citing *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 364 (D.D.C. 2025)).  Statements and actions by senior executive branch officials and the public's response thereto, Compl. ¶¶ 1, 4, 11–15, 19–20, 23, demonstrate "the public interest in disclosure" that will weigh in the balance against this and other exemption claims.  *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004).

Finally, Defendants concede that allegations relevant to requested relief are not subject to a motion to strike, Mot. to Strike 4, and so their demand to strike allegations admittedly relevant to the availability of attorneys' fees, Mot. to Strike 5, must also fail. The DNC has requested fees as a form of relief. Compl. ¶ D. In turn, Rule 8 required the DNC to plead the basis therefor. *See* Fed. R. Civ. P. 8(a)(2). Under FOIA, fees are available based on a multifactor analysis, including both "the public benefit derived from the case" and "the nature of the plaintiff's interest in the records." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (internal citation and quotation marks omitted); *see also Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) (requiring "*ex ante* assessment of the potential public value of the information requested"). Thus, allegations raising public concerns over potential deployments to the polls and the DNC's response, Compl. ¶¶ 1, 4, 11–15, 19–20, 23, are relevant to the relief sought in this litigation.

II.    **The Challenged Paragraphs Are Neither Unnecessarily Disparaging Nor Repulsive.**

Even if the Challenged Paragraphs were not relevant to this litigation—and they are indeed relevant—Defendants cannot establish that these allegations "unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court." *Judicial Watch*, 224 F.R.D. at 263. Defendants make no attempt to identify base verbiage, and there is none to be found. Rather, they claim it "prejudices Defendants to have to respond" to these allegations. Mot. to Strike 4. Yet it would hardly prejudice Defendants to answer Paragraphs 1, 4, 15, 19, 20, and 23 by asserting that "Defendants lack knowledge or information sufficient to form a belief regarding the truth" of these allegations, just as they already have regarding other allegations regarding the DNC's activities. Answer ¶¶ 7, 16–18, 21–22, 24. Nor would it prejudice Defendants to respond to Paragraphs 11 to 14, which concern public statements

5

and actions of executive branch officials.[1]  Ultimately, requiring Defendants to respond to ten paragraphs in an 18-page complaint "will not work an injustice or prejudice" federal agencies.  *Sai v. TSA* No. 1:14-cv-403, 2015 WL 13889866, at *5 (D.D.C. Aug. 19, 2015).

What remains is Defendants' vehement offense at a plain misreading of Paragraph 14.  *See* Mot. to Strike 4–5.  Paragraph 14 states in full:

> Even the Justice Department's longstanding election monitoring program recently departed from historic norms. For decades, DOJ sent career civil servants to locations selected based on the potential for voter intimidation and other violations of federal voting rights laws. In November 2025, the Civil Rights Division monitored locations selected by the California and New Jersey Republican Parties and sent a senior political appointee to personally monitor polling places in heavily Latino communities.

Compl. ¶ 14.  This allegation does not "insinuate . . . that the Civil Rights Division engaged in 'voter intimidation and other violations of federal voting rights laws.'"  Mot. to Strike 4 (quoting Compl. ¶ 14).  Defendants go on to attack the DNC's interest in protecting free and fair elections,

---

[1] *See, e.g.*, Alan Feuer and Ashley Ahn, *Trump Regrets Not Seizing Voting Machines After 2020 Election*, N.Y. Times (Jan. 11, 2026), https://www.nytimes.com/2026/01/11/us/trump-voting-machines-2020-election.html (Paragraph 11); Nick Corasaniti, *Why Trump's Calls to "Nationalize" Voting Have Raised Midterm Fears*, N.Y. Times (Feb. 7, 2026), https://www.nytimes.com/article/trumps-nationalize-voting-elections-midterms-explainer.html (Paragraphs 11 and 12); Charles Minshew et al., *Read the Annotated FBI Affidavit Used to Seize Fulton Ballots*, Atl. J.-Const. (Feb. 12, 2026), https://www.ajc.com/sp/annotated-the-fbis-affidavit-in-support-of-fulton-county-search (Paragraph 13); Press Release, U.S. Dep't of Justice, *Justice Department to Monitor Polls in 27 States for Compliance with Federal Voting Rights Laws* (Nov. 1, 2024), https://www.justice.gov/archives/opa/pr/justice-department-monitor-polls-27-states-compliance-federal-voting-rights-laws (Paragraph 14); Shawn Hubler and Laurel Rosenhall, *Justice Department Will Monitor Elections in California and New Jersey*, N.Y. Times (Oct. 24, 2025), https://www.nytimes.com/2025/10/24/us/politics/doj-election-monitors-california-new-jersey.html (Paragraph 14); Jennifer Medina, *Trump Administration Chooses a Critic of California Elections to Monitor Them*, N.Y. Times (Nov. 4, 2025), https://www.nytimes.com/2025/11/04/us/politics/trump-california-orange-county-elections-monitor.html (Paragraph 14).  Just today, the President once again refused to rule out sending troops or armed agents to the polls in November.  *See President Trump Says He's Willing to Send ICE, National Guard to the Polls in November*, C-SPAN (May 12, 2026), https://www.c-span.org/clip/white-house-event/president-trump-says-hes-willing-to-send-ice-national-guard-to-the-polls-in-november/5200208.

in language far more colorful than the Challenged Paragraphs.  Mot. to Strike 4–5.  However, the Democratic Party Platform articulates that the "the right to vote and to have your vote counted is the threshold of American democracy and liberty."  DNC, *Democratic Party Platform* 47–48 (2024),  https://democrats.org/wp-content/uploads/2025/07/2024-Democratic-Party-Platform.pdf.  It is a tragic day when DOJ deems it "fanciful," Mot. to Strike 4, that the national committee of a major political party would support core American values.

## CONCLUSION

For the reasons set out above, this Court should deny Defendants' partial motion to strike.

Dated: May 12, 2026

Benjamin B. Klubes
(Bar No. 428852)
Adam Miller
(Bar No. 496339)
Klubes Law Group
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 753-5054
bklubes@klubeslaw.com
amiller@klubeslaw.com

*Attorneys for the Democratic National Committee*

Respectfully submitted,

*/s/ Daniel J. Freeman*
Daniel J. Freeman
(Bar No. 90038422)
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
(202) 863-8000
freemand@dnc.org