UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC NATIONAL COMMITTEE,

Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, et al.,

Defendants.

Civil Action No. 26-0825 (BAH)

**JOINT STATUS REPORT**

Pursuant to this Court's Minute Order dated July 13, 2026, the parties, by and through their respective undersigned counsel, respectfully submit this Joint Status Report. As set forth herein, the parties have different positions regarding the status of this matter, which concerns requests by the Democratic National Committee ("DNC") for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

**Statement of the Democratic National Committee**

This case concerns eleven FOIA requests sent by the Democratic National Committee ("DNC") in October 2025 concerning potential deployment of federal agents and troops to polling places, drop boxes, and election offices. Compl. ¶ 1 (ECF No. 1). Fourteen days after the last report, the fundamental status remains the same: Defendants have not produced a single responsive record to the DNC. Election Day is 102 days away, but the DNC still does not know whether the thousands of potentially responsive documents identified by Defendants contain concrete plans to deploy troops or armed agents to the polls; guidelines to avoid confrontations between armed federal agents, eligible voters, and local election officials; or something else entirely. This Court has recognized that time is of the essence. *See* July 13 Minute Order (directing "defendants to

*immediately* begin processing potentially responsive" records in light of "less than four months [remaining] before the 2026 midterm elections"). With statutory deadlines long past, Defendants must do the same.

Once again, the DNC wishes to bring a few agency-specific concerns to this Court's attention. With respect to the FBI, the June 29 no-records response, 7/10 Status Rep., Defs.' ¶ 4 (ECF No. 22), has now been undercut by the DOJ Civil Rights Division's identification of potentially responsive FBI documents. *See* Defs.' ¶ 3. The Civil Rights Division sent the documents to the FBI and requested that the FBI respond directly, but the FBI has not offered a production date. The DNC respectfully requests that this Court confirm that the FBI must complete processing under its July quota and produce all responsive, non-exempt documents by no later than July 31.[1]

With respect to Customs and Border Protection, failures to respond promptly to DNC efforts to narrow and target processing have hampered production. For instance, the DNC proposed improved search strings on July 9, just before the last status report was due. On July 22, the DNC reached out to ask whether CBP had any update on application of the improved search strings. Minutes later, Defendants responded that the DNC's proposal had once again successfully narrowed the universe of potentially responsive documents, this time to a near-manageable figure. Within 24 hours, the DNC offered a final set of technical suggestions to improve responsiveness and reduce resources needed for review. They should be applied promptly, and the DNC

---

[1] In light of Defendants' renewed demand for formal process, *see* Defs.' ¶ 9, the DNC would welcome a brief status conference. *See* Fed. R. Civ. P. 7(b)(1)(A) (authorizing unwritten motions "during a hearing"). Drafting formal motion papers to request confirmation of the manner in which this Court's prior orders apply to issues raised by this status report would create substantial inefficiencies, ultimately at taxpayer expense. *See* 5 U.S.C. § 552(a)(4)(E)(i).

respectfully requests that this Court confirm CBP must produce all responsive, non-exempt documents from the first 1,000 pages reviewed by no later than July 31.

Finally, ICE still has not completed its search, notwithstanding this Court's July 13 Minute Order. Defendants concede that "final responses are pending from the Office of the Principal Legal Advisor, Office of Policy, and Management & Administration." Defs.' ¶ 7.[2] Moreover, ICE's anticipated first production date of August 7, 2026, cannot be squared with this Court's July 13 Minute Order, which specifically directs that "ICE . . . shall still process 1,000 pages of potentially responsive material for the month of July 2026 and each month thereafter, and produce non-exempt responsive records." 7/13 Minute Order. ICE appears to have given itself an extra period following processing for production. This Court should not allow ICE to push back production until the end of the first week of each month, which would prevent the disclosure of a fourth tranche of documents before Election Day, November 3, 2026. The DNC respectfully requests that this Court confirm that ICE must produce all responsive, non-exempt documents from the first 1,000 pages reviewed by no later than July 31.

<u>**Statement of the Defendants**</u>

1.      Plaintiff's suit arises under the Freedom of Information Act ("FOIA") and relates to eleven FOIA requests submitted by Plaintiff to Defendants. After the parties submitted a Joint Status Report on July 10, 2026 (ECF No. 22), this Court entered a Minute Order directing Defendants to "immediately begin processing potentially responsive to plaintiff's requests at a rate of at least 1,000 pages per month, including the month of July, and producing records for each outstanding request," and directing the parties to file a joint status report on July 24, 2026, and

---

[2] Once ICE has finally completed its search, the DNC intends to request prioritization between particular offices, but that is not yet possible.

every fourteen days thereafter, "advising the Court of the status of this matter, whether any disputes remain, and if so, proposing a schedule for further proceedings."

2.      As previously reported, the following components completed their searches and identified no responsive records: the Federal Bureau of Investigation ("FBI"), the Department of Justice ("DOJ") Criminal Division, the Department of War's National Guard Bureau and U.S. Northern Command.  ECF No. 22 ¶¶ 4, 6, 13–14.  Updates for the remaining components are provided in the paragraphs that follow.

3.      DOJ's Civil Rights Division ("CRT") reports that it has completed its review of potentially responsive records collected in response to Plaintiff's request and determined that no responsive records originated with CRT.  CRT's review did identify four records (comprising six pages) potentially responsive to Plaintiff's request that originated with FBI.  CRT sent those documents to FBI as a referral for review and response directly to Plaintiff.  CRT expects to issue a final response letter shortly.

4.      DOJ's Office of Information Policy ("OIP") reports that it has identified approximately fifty-five pages of records responsive to Plaintiff's FOIA request and has completed its initial processing of these fifty-five pages.  *See* ECF No. 22 ¶ 7.  OIP anticipates issuing a response on or before August 1, 2026.

5.      The Department of Homeland Security ("DHS") headquarters and DHS's Federal Protective Service ("FPS") conducted searches in response to Plaintiff's requests and located 56 potentially responsive records consisting of approximately 2,180 pages.  Fifteen of those pages pertained to FPS and have been processed.  The remaining 2,165 pages are being processed at the rate of 1,000 pages per month and DHS expects to make its first production by July 31, 2026.

6.      U.S. Customs and Border Protection ("CBP") has completed its search, which yielded some 1.6 million potentially responsive records.[3]  As previously reported, Defendants conferred with Plaintiff on June 26, 2026, regarding the volume of potentially responsive records and agreed to consider proposals by Plaintiff to narrow the records that would be subject to processing.  ECF No. 22 ¶ 10.  On July 7, 2026, Defendants reported to Plaintiff that a narrowed search, conducted with parameters suggested by Plaintiff, returned some 116,779 records.  *Id*.  On July 22, 2026, Defendants reported updated hit counts in response to Plaintiff's further narrowing proposal, which produced a total of 1,722 records, or 3,833 records including "families."  (A "family" is two or more records associated together, such as an email with two attachments.)  The 3,833 records comprise approximately 60,000 pages.  CBP is processing records at the rate of 1,000 pages per month, including for the month of July, and is engaging in further narrowing discussions with Plaintiff.

7.      U.S. Immigration and Customs Enforcement ("ICE") completed its search and sent Plaintiff a no-records response on June 10, 2026.  In ICE's view, the original search satisfied its obligations under FOIA because it was a "good faith effort" undertaken "using methods which can be reasonably expected to produce the information requested."  *DiBacco v. Dep't of the Army*, 926 F.3d 827, 832 (D.C. Cir. 2019).  However, after discussions between the parties and at Plaintiff's request, ICE agreed to conduct supplemental searches in part to avoid the prolonged delays

---

[3]      Because CBP's search for responsive records was complete by July 1, 2026, Defendants respectfully note their disagreement with the Court's statement that CBP "appear[ed] to be noncompliant" with the Court's May 26, 2026 order.  *See* Minute Order (July 13, 2026).  Processing the 1.6 million potentially responsive records located would have "impose[d] an unreasonable burden upon the agency," *AFGE v. DOC*, 907 F.2d 203, 209 (D.C. Cir. 1990), and so Defendants conferred with Plaintiff regarding potential narrowing proposals after the search was complete.

associated with motion practice.[4]  As described in the July 10, 2026 status report, ICE's search expanded to include the Executive Secretariat, Enforcement and Removal Headquarters, and the Office of Public Affairs, which in turn prompted searches of other components.  ECF No. 22 ¶ 11. As a result of the supplemental search the Executive Secretariat identified potentially responsive records; Enforcement and Removal Operations and Homeland Security Investigations identified no potentially responsive records; and final responses are pending from the Office of the Principal Legal Advisor, Office of Policy, and Management & Administration. The supplemental searches have located approximately 11,108 pages of potentially responsive records, which ICE is processing at 1,000 pages per month, including for the month of July.  ICE anticipates making its first production by August 7, 2026, a date chosen so as to include a greater number of responsive, non-exempt records in ICE's first production.

8.    The Office of the Secretary of War ("OSW") / Joint Staff completed searches that initially identified approximately 3,000 potentially responsive records.  A responsiveness review narrowed these results to approximately 600 potentially responsive records, which OSW is reviewing at a rate of 1,000 pages per month, including for the month of July.  OSW expects to make its first production on July 31, 2026.

9.    Plaintiff's section of this report once again requests that the Court enter various orders relating to the production of documents.  Defendants respectfully renew their objections that such requests are improper in a Joint Status Report and that Plaintiff has not made the required showing for the entry of such relief.  *See* ECF No. 22 ¶ 19; Fed. R. Civ. P. 7(b)(1).

---

[4]    For this reason, Defendants respectfully disagree with the Court's statement that ICE "appear[ed] to be noncompliant" with the Court's May 26, 2026 order.  *See* Minute Order (July 13, 2026).  Defendants do not understand the Court's order to have prohibited supplemental searches, undertaken at Plaintiff's request, to identify potentially responsive records.

Dated: July 24, 2026

 /s/ Daniel J. Freeman
Daniel J. Freeman
(Bar No. 90038422)
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
(202) 860-8000
freemand@dnc.org

Benjamin B. Klubes
(Bar No. 428852)
Adam Milller
(Bar No. 496339)
Klubes Law Group
1717 K Street NW, Suite 9000
Washington, DC 20006
(202) 753-5054
bklubes@kblueslaw.com
amiller@klubeslaw.com

*Attorneys for the Democratic
National Committee*

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     /s/ Andrew J. Vaden
        ANDREW J. VADEN, D.C. Bar #1044860
        Assistant United States Attorney
        601 D Street, NW
        Washington, DC 20530
        (202) 252-2437

*Attorneys for the United States of America*