UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC NATIONAL COMMITTEE,

Plaintiff,

v.

Civil Action No. 26-0825 (BAH)

U.S. DEPARTMENT OF JUSTICE, et al.,

Defendants.

## JOINT STATUS REPORT

Pursuant to this Court's Minute Order dated July 31, 2026, the parties, by and through their respective undersigned counsel, respectfully submit this Joint Status Report. As set forth herein, the parties have different positions regarding the status of this matter, which concerns requests by the Democratic National Committee ("DNC") for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## Statement of the Democratic National Committee

This case concerns eleven FOIA requests sent by the DNC in October 2025 concerning potential deployment of federal agents and troops to polling places, drop boxes, and election offices. Compl. ¶ 1 (ECF No. 1). Due entirely to this Court's directives, Defendants have now made halting progress towards compliance. Nonetheless, Defendants have produced vanishingly few documents beyond public materials of marginal relevance and press clipping expressly excluded from the DNC's FOIA requests.

Of note, U.S. Customs and Border Protection ("CBP") still has not produced documents to the DNC, having deemed all documents reviewed not to be relevant. Nonetheless, the DNC confirms that CBP has agreed to implement requested technical measures to focus its search.

More pressingly, U.S. Immigration and Customs Enforcement ("ICE") has finally produced records, but they are not responsive to the DNC's request. Specifically, ICE produced 576 pages of unannotated press clippings compiled in the "DHS Daily Briefing." In an effort to avoid just such productions, the DNC's FOIA request had expressly stated, "The above request excludes agency records consisting solely of news articles or press clippings, so long as the records include no accompanying discussion by agency officials." Oct. 17, 2025 ICE FOIA Request (ECF No. 1-7). By including these documents in its 1,000-page monthly review quota, ICE has circumvented this Court's orders and delayed public awareness of information contained in responsive records. Thus, the DNC agrees with Defendants that weekly meetings are not needed to narrow its requests, but only because the requests are already properly narrowed. The persistent issue is ICE's failure to abide by those terms and apparent queuing of nonresponsive documents before responsive ones.

Finally, DNC believes that batched production of responsive records is warranted, given the "time-sensitive importance" of this matter, which this Court has already recognized. May 26 Minute Order (quoting *Middle E. Forum v. U.S. Dep't of Homeland Security*, 297 F. Supp. 3d 183, 186–87 (D.D.C. 2018)). Although the DNC is sensitive to resources necessary to transmit a production, documents already deemed responsive should be held no longer than necessary in the weeks before the midterm elections.

### Statement of the Defendants

1.      Plaintiff's suit arises under the Freedom of Information Act ("FOIA") and relates to eleven FOIA requests submitted by Plaintiff to Defendants. After the parties submitted a Joint Status Report on July 24, 2026 (ECF No. 23), this Court entered a Minute Order directing the

parties to submit a further status report by August 7, 2026, providing information on five specified topics. Defendants provide the following information in response to the Court's order.

**Productions by Defendants**

2. **DOJ's Office of Information Policy ("OIP").** On July 31, 2026, OIP issued its final response to Plaintiff's request, consisting of a production of 59 pages with certain information withheld pursuant to specified FOIA exemptions. OIP has reviewed all potentially responsive records located, and OIP's processing of these potentially responsive records is now complete.

3. **Office of the Secretary of War ("OSW").** On July 31, 2026, OSW provided its first production of 142 pages in response to Plaintiff's request. OSW confirms that it processed at least 1,000 potentially responsive pages for the month of July. OSW is processing the remaining potentially responsive documents and anticipates issuing a final response by August 31, 2026.

4. **Department of Homeland Security ("DHS") Headquarters.** On July 30, 2026, DHS headquarters provided its first production of 104 responsive pages in response to Plaintiff's request. DHS headquarters confirms that it processed at least 1,000 potentially responsive pages for the month of July. DHS headquarters anticipates that its next production will be made by August 31, 2026.

5. **Customs and Border Protection ("CBP").** On July 30, 2026, CBP issued an interim response to Plaintiff's request. In that response, CBP indicated that it processed 127 potentially responsive records comprising 6,111 pages and 19 Excel spreadsheets during the month of July 2026, but that none of those 127 records were responsive to Plaintiff's request. The 127 potentially responsive records were drawn from a subgroup of records that were hits for a narrowed subsearch implemented at Plaintiff's request. Counsel for the Defendant has provided Plaintiff a description of types of documents located by that search that were deemed non-responsive. CBP

expects to issue its next interim response by August 31, 2026, and is reviewing records that contain hits for narrowed subsearches implemented at Plaintiff's request.

6.      **Immigration and Customs Enforcement ("ICE").**  On August 7, 2026, ICE provided its first production of 576 pages in response to Plaintiff's request.  ICE confirms that it processed at least 1,000 potentially responsive pages for this production.  ICE further confirms that all supplemental searches by ICE components are complete.  *See* ECF No. 23 ¶ 7.  ICE anticipates that its next production will be made by September 7, 2026.[1]

**Records Referred to FBI**

7.      The Federal Bureau of Investigation ("FBI") processed the 6 pages referred to it by DOJ's Civil Rights Division and produced 4 pages to Plaintiff on August 7, 2026.  See ECF No. 23 ¶ 3.  (Of the remaining two pages, one was blank and one was a duplicate.)

**CBP's Implementation of Plaintiff's Technical Suggestions**

8.      CBP has fully implemented Plaintiff's requested prioritization of the potentially responsive records located by its searches.  More specifically, Defendants informed Plaintiff on June 26, 2026, that CBP's search in response to Plaintiff's request returned 1,642,034 potentially responsive records.  The parties then engaged in a series of narrowing discussions too extensive to recount here.  By July 22, those discussions resulted in a narrowed population of 1,722 records (or 3,833 records including families).  *See* ECF No. 23 ¶ 6.  On July 29, Defendants agreed to Plaintiff's request to prioritize "direct" hits and deprioritize records that are only family members

---

[1]      Plaintiff objects that ICE produced press clippings despite a proviso in Plaintiff's request indicating that press clippings without accompanying discussion by agency officials are non-responsive.  *See* ECF No. 1-7 at 3.  In light of Plaintiff's observation, undersigned counsel for Defendants has drawn ICE's attention to this proviso.  Plaintiff's insinuation that ICE is "apparent[ly] queuing . . . nonresponsive documents before responsive ones" is unfounded and ICE stands ready to consider any technically feasible narrowing or prioritization requests Plaintiff may advance.

of direct hits, and also agreed to prioritize records that contain hits for Plaintiff's suggested "monitor," "deploy," and "position" proximity searches and deprioritize hits for Plaintiff's suggested "post" proximity search.  On July 30, Defendants provided Plaintiff further information in response to Plaintiff's question regarding CBP's technical capabilities to further narrow the population of potentially responsive records for review.

**Additional Topics Identified by the Court**

9.      In its July 31, 2026, Minute Order, the Court ordered the parties to address whether "decisionmakers from ICE and CBP should be directed to meet weekly with plaintiff" to "facilitate the narrowing of plaintiff's requests."  Defendants respectfully submit that no such meetings are necessary.  CBP has agreed to fully implement Plaintiff's narrowing suggestions and stands ready to implement any further technically feasible narrowing requests that Plaintiff might supply.  ICE likewise stands ready to consider any technically feasible narrowing requests that Plaintiff might advance.  In these circumstances, Defendants do not believe that court-ordered weekly meetings would be warranted.

10.     The Court also ordered the parties to address whether "defendants should be directed to produce responsive processed pages in batches, every 10 days."  Defendants respectfully submit that an order along those lines would have the undesired consequence of diverting resources away from processing potentially responsive documents and toward the mechanics of finalizing, clearing, and transmitting more frequent productions.

*      *      *

Dated: August 7, 2026

 */s/ Daniel J. Freeman*
Daniel J. Freeman
(Bar No. 90038422)
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
(202) 860-8000
freemand@dnc.org

Benjamin B. Klubes
(Bar No. 428852)
Adam Milller
(Bar No. 496339)
Klubes Law Group
1717 K Street NW, Suite 9000
Washington, DC 20006
(202) 753-5054
bklubes@kblueslaw.com
amiller@klubeslaw.com

*Attorneys for the Democratic
National Committee*

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   */s/ Andrew J. Vaden*
      ANDREW J. VADEN, D.C. Bar #1044860
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2437

*Attorneys for the United States of America*